UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KIMBERLY A. REECE, *et al.*,

    Plaintiffs,

vs.

PROGRESSIVE PREFERRED
INSURANCE COMPANY, *et al.*,

    Defendants.

Case No. 3:24-cv-153

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

---

**ORDER: (1) GRANTING DEFENDANT SCHNEIDER NATIONAL CARRIERS, INC.'S REQUEST TO REALIGN COMMUNITY INSURANCE COMPANY AS A PLAINTIFF (Doc. No. 1); AND (2) DENYING REMAND OF THIS CASE TO THE COURT OF COMMON PLEAS FOR MONTGOMERY COUNTY, OHIO**

---

This civil case is before the Court following the parties' responses to its Show Cause Order. Doc. No. 18. Defendant Schneider National Carriers, Inc. ("Schneider") removed the case to this Court, asserting diversity jurisdiction under 18 U.S.C. § 1332(a). Doc. No. 1 at PageID 2–4, 5–6; *see* 28 U.S.C. § 1441(a). This Court directed Schneider to show cause why this case should not be remanded for lack of diversity. Doc. No. 18. Schneider responded noting that "[i]n its removal petition, Schneider requested that the Court re-align Community Insurance to be a plaintiff in this matter." Doc. No. 20 at PageID 255. Plaintiffs Kimberly A. Reece and Joseph C. Reece (the "Reeces") also responded, opposing Schneider's request for realignment. Doc. No. 22. For the reasons that follow, this Court realigns Community Insurance Co. ("Community") as a plaintiff and retains jurisdiction over this case.

**I.    BACKGROUND**

The Reeces initially filed this case in the Court of Common Pleas for Montgomery County, Ohio alleging negligence against Schneider and Defendant Mekonnen ("Mekonnen") after an

automobile collision between the Reeces and Mekonnen. Doc. No. 4. The Reeces also filed insurance coverage claims against Defendant Progressive Preferred Insurance Co. ("Progressive") and a claim against Community related to Community's potential subrogation and/or reimbursement rights/obligations pursuant to any applicable insurance policy. *Id.* at Page ID 195–199. The Reeces voluntarily dismissed Progressive on April 3, 2024. Doc. No. 1-1 at PageID 133.

Schnieder timely removed, and no defendant objected. Doc. No. 1 at PageID 2–4, 5–6. On August 28, 2024, this Court issued a Show Cause Order because, according to the parties' Citizenship Disclosure Statements, the Reeces and Community are both citizens of Ohio. Doc. Nos. 11, 16, 18. In response, Schneider asserted that realignment of Community is proper because Community's interests are aligned with those of the Reeces, due to its potential subrogation and/or potential reimbursement rights. Doc. No. 24. Schneider noted—correctly—that realignment of Community as a plaintiff would result in complete diversity. Doc. No. 20 at PageID 256. In response to Schneider, and in opposition to realignment, the Reeces argued that Community's interests are not aligned with those of the Reeces and that there is an "actual" controversy between the parties. Doc. No. 22 at PageID 262. Indeed, in their complaint, the Reeces not only seek a declaration of Community's rights and obligations but also allege that Community's complete subrogation/reimbursement rights might be nonexistent. Doc. No. 4 at PageID 197–198.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Two bases for jurisdiction exist: federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. Diversity jurisdiction exists where all plaintiffs are citizens of different states than all defendants, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). A defendant in state court may remove a case to the federal

2

district court "embracing the place where the action is pending" if the lawsuit meets the diversity requirements. 28 U.S.C. § 1441(b); *see also Ethington v. Gen. Elec. Co.*, 575 F.Supp.2d 855, 858 (N.D. Ohio 2008) (explaining that "[t]he forum defendant rule generally prohibits defendants from removing a case" when the suit was filed "in the defendant's own home state courts"). The removing party bears the burden of proving that this Court would have had subject-matter jurisdiction had the non-removing party filed the complaint in federal court. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).

To determine whether there is complete diversity, "a federal court must look beyond the nominal designation of the parties in the pleadings and should realign the parties according to their real interests in the dispute." *Safeco Inc. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545 (6th Cir. 1994) (citing *Dawson v. Columbia Ave. Sav. Fund*, 197 U.S. 178, 180 (1905)). "Realignment, then, may create or destroy diversity jurisdiction." *Id.* (citing *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941); and *Merchs.' Cotton–Press & Storage Co. v. Ins. Co. of N. Am.*, 151 U.S. 368, 385 (1894)).

### III. LAW AND ANALYSIS

The Sixth Circuit applies the "primary purpose" test to determine whether realignment of the parties is warranted. *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992). Under this test, the parties must "be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *Id.* (citing *Emps. Ins. of Wausau v. Crown Cork and Seal Co.*, 905 F.2d 42 (3d Cir. 1990); *Cont'l Airlines v. Goodyear Tire and Rubber Co.*, 819 F.2d 1519 (9th Cir. 1987); and *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir. 1984)). Even where there is more than one legitimately disputed issue, the primary dispute governs alignment of the parties. *Id.* at 1089–90

(rejecting the Seventh Circuit's "actual and substantial conflict" test for determining realignment). Therefore, this Court must (1) determine what the primary dispute is; and (2) determine the parties' interests as to the primary dispute. *See id* at 1090–91.

To start, the primary dispute in this lawsuit is whether Schnieder and/or Mekonnen negligently caused the Reeces' injuries. Doc. No. 4 at PageID 188–192. While there may be an actual controversy between the Reeces and Community as to whether, and to what degree, Community has any rights to subrogation and/or reimbursement, those potential rights are completely dependent upon the existence of the underlying negligence claim.

Moreover, if a tort claim is made against one defendant and another party is also named as a defendant because that party may have some interest, adverse or otherwise, in the outcome or subject matter of the suit, the underlying tort claim is the primary purpose of the suit. *See Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559–60 (6th Cir. 2010) (where a city was named as a defendant solely due to the city's interest in liens on certain properties in the same cause of action as a tort claim stemming from the condition of those properties, the primary purpose of the lawsuit was to abate the conditions of the properties); *Smith v. Gen. Motors Corp.*, No. 2:11-cv-782, 2011 WL 5999865, at *2 (S.D. Ohio Nov. 30, 2011) (concluding that the underlying dispute was whether defendants were liable in tort for plaintiffs' injuries, and that insurers were not involved in the primary dispute because they only had subrogation interests). This is the case even where an insurer's rights are called into question. *See Smith*, 2011 WL 5999865, at *2 (reasoning that even if insurers were considered to be adverse to plaintiffs in the sense that they were asserting a claim to a portion of plaintiffs' potential proceeds in the lawsuit, the primary dispute was still whether the defendants tortiously caused plaintiffs' injuries). In sum, the Court finds the primary purpose of the suit is the negligence claim.

Next, the Court must consider whether Community's interests align with the Reeces' interests on the question of liability for negligence. *See U.S. Fid. & Guar. Co.*, 955 F.2d at 1089. If Community's interests are more at odds with Schneider/Mekonnen's position than they are with the Reeces' position, then Community should be realigned as a plaintiff. *See DiBella v. Carpenter*, No. 2:10-cv-174, 2010 WL 2605824, at *3 (S.D. Ohio June 25, 2010). In other words, if Community shares an interest in having the Reeces recover from Schneider and/or Mekonnen for negligence, then realignment is proper, and complete diversity would exist. On the other hand, if Community does not share such an interest, then realignment would not be warranted, and complete diversity would be destroyed. Here, Community's interests—its potential rights to subrogation and potential rights to reimbursement—coincide with the Reeces' interests as to the primary purpose of the suit: negligence.

First, Community's interest in its potential subrogation rights aligns directly with the Reeces' interests. "[S]ubrogation is the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Roman v. Barlow*, No. 2:12-cv-00747, 2012 WL 6594961, at *3 (S.D. Ohio Dec. 18, 2012) (quoting BLACK'S LAW DICTIONARY (7th Ed. 1999)) (internal quotations omitted). An insurer's subrogation rights are, by their very nature, derivative of the rights of the insured. *See Underwriters at Lloyd's Under Policy No. LHO 10497, et al. v. Peerless Storage Co.*, 404 F.Supp 492, 496 (S.D. Ohio 1975) (explaining that "[s]ince [an] insurer's claim by subrogation is derivative from that of the insured, it is subject to the same statute of limitations as though the cause of action was sued upon by the insured"). If Community has a subrogation right under an applicable insurance policy, its interest in the negligence claim would

5

be the same as the Reeces' interest because the insurer in essence is stepping into the insured's shoes.

Second, since Community has paid medical expenses on behalf of the Reeces in connection with the automobile collision at issue, then Community has a potential right to be reimbursed from the proceeds that the Reeces may collect in this lawsuit. Doc. No. 5 at PageID 203. If Community has such a right, and the Reeces are successful at establishing liability and recovering monetary damages from Schnieder and/or Mekonnen, Community will also benefit because it would obtain a source for reimbursement, as opposed to not having any source for reimbursement at all. *See Smith*, 2011 WL 5999865, at *2 (concluding that insurers asserting entitlement to a certain amount of plaintiffs' potential proceeds from the lawsuit were still properly aligned as plaintiffs because "they share[d] an interest in having Plaintiffs recover from Defendants . . . based on the allegations in the complaint").

So, while the Reeces might legitimately question the very foundation of Community's subrogation and reimbursement rights, as opposed to merely window-dressing for the purpose of destroying diversity jurisdiction in this case, *Chase Nat'l Bank*, 314 U.S. at 69, Community's interests are still more at odds with the interests of Schnieder/Mekonnen, who seek to avoid liability for negligence. Community should therefore be realigned as a plaintiff. Because realignment creates complete diversity, and the amount-in-controversy appears to be satisfied (Doc. No. 1 at PageID 4–5), this Court retains jurisdiction over the case.

Although Community is being realigned as a plaintiff, any legal claims that the Reeces' may have against Community remain in this case.

6

## IV. CONCLUSION

For the reasons stated, the Court: (1) **GRANTS** Schnieder's request to realign Community as a plaintiff (Doc. No. 1); and (2) **DENIES** remand to the Court of Common Pleas for Montgomery County, Ohio.

**IT IS SO ORDERED.**

April 1, 2025                                          s/*Michael J. Newman*
                                                       Hon. Michael J. Newman
                                                       United States District Judge

7